FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

'98 JUN -4  AM 11: 04

U.S. DISTRICT COURT
N.D. OF ALABAMA

cho

TINA R. MERRELL,                    }
                                    }
        Plaintiff,                  }
                                    }      CIVIL ACTION NO.
    vs.                             }
                                    }      CV-97-AR-0098-S
ASSOCIATED GROCERS OF THE           }
SOUTH, INC. and BUFORD              }
COCHRAN,                            }
                                    }

ENTERED

JUN 4  1998

        Defendants.


## MEMORANDUM OPINION

        The above-entitled action is now before the court on a motion

for summary judgment filed by defendant, Buford Cochran

("Cochran"), on February 26, 1998, and a motion for summary

judgment filed by defendant, Associated Grocers of the South, Inc.

("AGS"), on March 2, 1998.  Plaintiff, Tina R. Merrell

("Merrell"), a female formerly employed by AGS, alleges that

Cochran and AGS subjected her to hostile environment sexual

harassment in violation of the Civil Rights Act of 1964, *as*

*amended*, and the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et*

*seq.* ("Title VII").  In a related claim, Merrell also alleges that

AGS transferred her to a different position and, then, discharged

her in retaliation for reporting sexual harassment by Cochran, her

former supervisor.  Lastly, Merrell alleges that AGS is liable

77

under Alabama law for its negligent retention and supervision of
Cochran.  In addition to other relief, Merrell prays for an award
of punitive damages.  For the reasons set out more fully below,
the court concludes that AGS and Cochran are entitled to the
relief sought in their respective motions.

### I. *Pertinent Undisputed Facts*

AGS hired Merrell as a secretary in May 1994.  Def.'s Exh. 4
at 45-46.  On March 15, 1996, Merrell began working as the
secretary to Cochran, who served as AGS's Director of Warehouse
Operation at that time.  Def.'s Exh. 5 at ¶ 2.  According to
Merrell, almost immediately after she began working for Cochran,
he began to harass her sexually.  For example, Merrell maintains
that Cochran repeatedly commented on her physique, specifically
her legs.  Compl. at ¶ 13.  Likewise, she claims that Cochran
"probably touched [her] almost every day."  Exh. A to Pl.'s Mot.
for Partial Summ. J. at 222.  More specifically, she claims that
Cochran touched her buttocks and that he came close to touching
her breasts on several occasions.  *Id.* at 223-24.  In addition,
Merrell claims that Cochran would "get right in [her] face and
talk within kissing distance."  *Id.* at 222.  Apparently, this last
behavior occurred on a "daily" basis.  *Id.*  According to Merrell,

2

Cochran also asked her to begin wearing shorts or miniskirts to work. *Id.* at 192-95. Merrell recounts a number of similar, additional incidents. Compl. at ¶¶ 13-21.

On April 17, 1996, Merrell met with James Randolph ("Randolph"), AGS's Chief Executive Officer. Def.'s Exh. 5 at ¶ 2. At this meeting, Merrell told Randolph that she felt as though Cochran was harassing her. *Id.*; Def.'s Exh. 4 at 314-15; Def.'s Exh. 20 at 19. Immediately following this meeting, Randolph began an investigation of Merrell's complaint. He interviewed both Cochran and James Waugh ("Waugh"), AGS's Warehouse Manager. Def.'s Exh. 20 at 15-19. Randolph interviewed Waugh because Merrell identified him as a witness to some of the alleged harassment. Both Cochran and Waugh denied having any knowledge about Merrell's complaints. *Id.* at 16, 18. Nevertheless, Randolph offered Merrell an immediate transfer to the company's Print Shop, a department not under Cochran's supervision. Def.'s Exh. 4 at 314. Merrell accepted the transfer, and she began working as an administrative assistant to the Print Shop supervisor, G.W. Johnson ("Johnson"), that same day. Def.'s Exh. 5 at ¶ 2. This transfer did not affect Merrell's overall compensation. In fact, it enabled her to earn overtime pay. Moreover, it is undisputed that, following the transfer, Merrell

did not experience any further harassment by Cochran.   Def.'s

Exh. 4 at 188.   Notwithstanding this last fact, Merrell filed a

charge of discrimination with the Equal Employment Opportunity

Commission ("EEOC") on June 12, 1996.   Exh. D to Pl.'s Mot. for

Partial Summ. J.

　　　Not long after her transfer, Merrell became dissatisfied with

her duties in the Print Shop.   As opposed to working exclusively

in a clerical capacity, Merrell's responsibilities grew over time

to include some more labor-intensive tasks.   For example,

according to Merrell, she was required to lift heavy boxes, slot

mail, and run some of the Print Shop machinery.   *Id.* at 316.   In

an attempt to remedy this situation, Merrell wrote a letter to

Randolph on July 1, 1996, in which she voiced her dissatisfaction

with her Print Shop position and requested a transfer to a purely

secretarial position.   Exh. E to Pl.'s Mot. for Partial Summ. J.

　　　On July 5, 1996, Merrell was laid off from her Print Shop

position during a reduction in force at AGS.   Def.'s Exh. 5 at ¶

2.   Hank Schild ("Schild"), the department head for the Print

Shop, made this decision.   Def.'s Exh. 7 at 4.   In part, Schild

claims that he made the decision to lay-off Merrell instead of

someone else because of the "poor work ethic" that Merrell

demonstrated during her tenure in the Print Shop.   *Id.* at 3-4;

Def.'s Exh. 9 at 54-55.  This lawsuit followed.

## II. *Summary Judgment Standard*

Rule 56 states in pertinent part:

> The judgment sought shall be rendered forthwith if the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with affidavits, if any, show
> that there is no genuine issue as to any material fact and
> that the moving party is entitled to a judgment as a matter
> of law.

Rule 56(c), Fed.R.Civ.P.  In addition, the Eleventh Circuit has

observed that "[s]ummary judgment is appropriate where there

exists no genuine issue of material fact and the movant is

entitled to judgment as a matter of law."  Turnes v. AmSouth Bank,

N.A., 36 F.3d 1057, 1061 (11th Cir. 1994).  In determining the

existence of a genuine issue of material fact, the court is

obliged to review the record and all its inferences in the light

most favorable to the nonmoving party.  *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct.

1348, 1356 (1986).  AGS and Cochran have invoked Rule 56.


## III. *Discussion*

As noted above, Merrell brings claims under Title VII against

both AGS and Cochran.  In addition, she brings a claim for

negligent retention and supervision against AGS under Alabama

6

law.[1]  The court will address these claims against each defendant

separately, beginning with Cochran.

### A. Cochran's Title VII Liability

Merrell directs her Title VII hostile environment claim

against *both* her employer and Cochran, her former supervisor.  In

support of his motion for summary judgment, Cochran argues that,

because Merrell has named AGS as a defendant in this action, he is

due to be dismissed.  This argument is well taken.

It is well settled in the Eleventh Circuit that individual

capacity suits under Title VII are inappropriate.  *Cross v.*

*Alabama*, 49 F.3d 1490, 1504 (11th Cir. 1995) (quoting *Busby v.*

*City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)); see also

*Smith v. Lomax*, 45 F.3d 402, 404 n.4 (11th Cir. 1995).  The

impropriety of such suits stems from the fact that "[t]he relief

granted under Title VII is against the *employer*, not individual

employees whose actions would constitute a violation of the Act."

*Id.* (emphasis in original).  As one court explained, "[w]here the

employer has been sued directly ... the naming of individual

---

[1]      Although Merrell's intent is not entirely clear from the wording
of her complaint, for purposes of this opinion, the court assumes that Merrell
directs her state law negligent retention and supervision claim against only
AGS.  Common sense suggests that, because Cochran is the subject of this
claim, he cannot be held liable for retaining or supervising himself, either
negligently or otherwise.

employees ... is unnecessary and duplicative." *Cleveland v. KFC Nat'l Management Co.*, 948 F. Supp. 62, 65 (N.D.Ga. 1996).  In light of this authority, the court concludes that, insofar as this action asserts claims against Cochran under Title VII, it is due to be dismissed as a matter of law.[2]  For the balance of this opinion, the court will address Merrell's claims as if they are brought against only AGS.

### B. AGS's State Law Liability

Merrell alleges that AGS is liable under Alabama law for its negligent retention and supervision of Cochran.  Compl. ¶¶ 27-31.  In its initial brief in support of its motion for summary judgment, AGS attacks this claim by arguing that the record contains no evidence to demonstrate that the company was aware that Cochran was incompetent to deal with others.  AGS's Mem. In Support of Mot. for Summ. J. at 35-37.  Despite this attack, however, Merrell makes no detectable effort to refute AGS's contention or to justify her negligent retention and supervision claim.  Given these circumstances, her failure is significant.  As the Eleventh Circuit has said:

There is no burden on the district court to distill every

---

[2]     Perhaps in anticipation of this conclusion, Merrell advised the court in papers filed on March 17, 1998, that she does not oppose Cochran's motion for summary judgment.

> potential argument that could be based upon the materials
> before it on summary judgment. Rather, the onus is upon the
> parties to formulate arguments; *grounds alleged in the*
> *complaint but not relied upon in summary judgment are deemed*
> *abandoned.*

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th

Cir.), *cert. denied*, 516 U.S. 817, 116 S.Ct. 74 (1995).   In

keeping with this authority, the court concludes that Merrell's

failure to defend her state law negligent retention and

supervision claim constitutes an abandonment of that claim.

Accordingly, AGS is due to receive summary judgment on said claim.

### C. *Merrell's Hostile Environment Claim*

Merrell alleges that AGS, through its agent, Cochran,

subjected her to hostile environment sexual harassment.  AS noted

above, Merrell predicates this claim on a number of allegedly

harassing incidents.  For example, Merrell claims that Cochran

instructed her to parade back and forth across a catwalk located

in the warehouse in a purported effort to look up her dress.

Compl. at ¶ 15; Def.'s Exh. 4 at 193-94; Def.'s Exh. 24.   Merrell

also claims, that after this incident, Cochran instructed her to

begin wearing shorts or miniskirts to work.  Def.'s Exh. 4 at 191-

92; Def.'s Exh. 24.  According to Merrell, Cochran also had a

habit of groping himself in front of her on a daily basis.  Compl.

at ¶ 20; Def.'s Exh. 24.  Merrell contends that these and several

9

other incidents of harassment occurred throughout the one-month period in which she worked under Cochran's supervision.   Merrell claims that AGS is *directly* liable for this alleged harassment. Pl.'s Mem. of Law at 7.

According to the Eleventh Circuit, in order for an employee to hold an employer directly liable for hostile environment sexual harassment by a supervisor, the employee must prove that the employer either knew or should have known about the alleged harassment and failed to take prompt, remedial action.  *Reynolds v. CSX Transp., Inc.*, 115 F.3d 860, 866 (11th Cir. 1997).   An employee can show that her employer knew of or should have known of the alleged harassment by proving either: (1) that she complained to higher management about the problem; or (2) that the harassment was so pervasive as to infer constructive knowledge on the part of higher management.  *Id*. at 866-67 (citing *Faragher v. City of Boca Raton*, 111 F.3d 1530, 1538 (11th Cir. 1997) (en banc)).

When the foregoing standard is applied to the facts of the instant case, it is clear that AGS cannot be held directly liable for any sexual harassment by Cochran.  It is undisputed that Merrell did not complain to higher management at AGS about Cochran's behavior until she reported it to Randolph on April 17,

10

1996.  It also is undisputed that, following Merrell's complaint,

Randolph immediately undertook an investigation of her complaint

by speaking with Cochran and with Waugh, the only employee Merrell

identified to Randolph as a witness to the alleged harassment.  It

also is undisputed that, despite the fact that neither Cochran nor

Waugh would confirm Merrell's story, Randolph immediately afforded

her the chance to transfer to the Print Shop, an area that is

entirely separate, both physically and organizationally, from the

company's warehouse operations.  As noted above, Merrell

voluntarily accepted this transfer.  Finally, it is undisputed

that, following Merrell's transfer to the Print Shop on April 17,

1996, she did not experience any further harassment by Cochran for

the remainder of her tenure at AGS.[3]  In short, the record clearly

indicates that, once AGS became aware of Cochran's alleged

misconduct conduct, it took prompt, remedial action.  *Cf.*

*Reynolds*, 115 F.3d at 867 (defining "prompt remedial action" as

measures "reasonably likely to prevent the misconduct from

recurring").  With this evidence in mind, and in view of the

foregoing standard, the court concludes that AGS cannot be held

---

[3]      However, according to Merrell, following her transfer, Cochran
would, on occasion, greet her in a sarcastic manner.  Def.'s Exh. 4 at 326.
In the court's opinion, while this behavior was perhaps rude and
unprofessional, it did not constitute continued harassment by Cochran.
Merrell does not contend otherwise.

*directly* liable for Cochran's alleged misconduct.[4]

Merrell also contends that AGS is *indirectly* liable for

Cochran's alleged misconduct. According to the Eleventh Circuit:

> An employer is indirectly liable for hostile environment
> sexual harassment in two situations: "(1) when a harasser is
> acting within the scope of his employment in perpetrating
> the harassment; and (2) when a harasser is acting outside
> the scope of his employment, but is aided in accomplishing
> the harassment by the existence of the [employment]
> relationship."

*Fleming v. Boeing Co.*, 120 F.3d 242, 246 (11th Cir. 1997)

(alteration in original) (citations omitted). In support of her

claim of indirect liability, Merrell argues that Cochran was aided

in harassing her by virtue of his position as her supervisor.[5]

Pl.'s Mem. of Law at 9. This argument is not well taken.

Under the law of the Eleventh Circuit, the mere fact that a

supervisory employee sexually harasses one of his subordinates

---

[4]    Merrell does not contend that, due to the pervasiveness of
Cochran's behavior, AGS should have known about the alleged harassment before
she reported it. However, even if Merrell was to advance such a contention,
it would avail her nothing. The record clearly indicates that AGS had a well
disseminated, anti-sexual harassment policy in force during the relevant time
period. Merrell admits that she was familiar with this policy at the time of
her alleged harassment and that the policy was posted continuously throughout
her employment at AGS. Def.'s Exh. 18 at 185. In this circuit, it is well
settled that the existence of such a policy "insulates an employer from
liability under Title VII for a hostile environment sexual harassment claim
premised on constructive knowledge." *Farley v. Am. Cast Iron Pipe Co.*, 115
F.3d 1548, 1554 (11th Cir. 1997).

[5]    In fact, Merrell makes this argument in support of her claim for
*direct* liability. However, as *Fleming* makes clear, this argument actually
invokes the standard for *indirect* liability for hostile environment sexual
harassment. The court will evaluate this argument accordingly.

12

does not, without more, automatically create liability for an

employer under Title VII.  Rather, in order for such conduct to

create indirect liability for an employer, the supervisor must try

to facilitate the harassment by using the authority conferred upon

him by the employer to threaten, coerce, or intimidate the

subordinate.  As the Eleventh Circuit has explained:

> In one sense, a supervisor is always aided in accomplishing
> hostile environment sexual harassment by the existence of an
> agency relationship with his employer because his
> responsibilities include close proximity to and regular
> contact with the victim.  However, the common law rule does
> not use "aided" in such a broad sense. *Rather, the employer
> is liable only if the harassment is accomplished by an
> instrumentality of the agency or through conduct associated
> with the agency.  In Sparks [v. Pilot Freight Carriers,
> Inc., 830 F.2d 1554 (11th Cir. 1987)], for example, the
> harasser used the authority delegated to him by the company
> to assist in the harassment: He repeatedly reminded the
> victim that he could fire her if she refused his advances.*

*Faragher v. City of Boca Raton*, 111 F.3d 1530, 1537 (11th Cir.)

(en banc) (emphasis supplied and citations omitted), *cert.*

*granted*, ___ U.S. ___, 118 S.Ct. 438 (1997).

In the instant case, Merrell makes no showing that Cochran

used the authority delegated to him by AGS to assist in harassing

Merrell.  Although Merrell attempts to characterize the "catwalk

incident" as one in which Cochran abused his supervisory authority

to make her walk across the catwalk in a dress while he stood

underneath and watched, she points to nothing in the record which

13

supports this characterization.  For example, Merrell puts forward
no evidence to suggest that Cochran compelled her to walk across
the catwalk by virtue of his authority over her.  More
importantly, she points to nothing which suggests that she feared
some sort of reprisal or adverse employment action by Cochran if
she refused to do so.  Absent such evidence, this court is
unwilling to say that Cochran was aided by the existence of the
supervisory authority conferred on him by AGS in perpetrating the
alleged harassment.  Given the record in this case, if the court
were to say otherwise, it would, in effect, allow Merrell to hold
AGS responsible for a momentary lapse in her own good judgment.
Therefore, as nothing in the record suggests either that Cochran's
behavior toward Merrell was an attempt to accomplish any of AGS's
objectives or that AGS authorized the alleged harassment, either
expressly or impliedly, at any time, the court concludes that AGS
cannot be held *indirectly* liable for Cochran's alleged harassment.

### D. Merrell's Retaliation Claims

Merrell alleges that AGS retaliated against her on two
occasions in violation of Title VII.[6]  First, she claims that the

---

[6]      Actually, Merrell claims that AGS retaliated against her on three
occasions.  In addition to the two instances discussed above, she also claims
that Cochran retaliated against her by taking away her assigned parking space
and by issuing her a parking violation after she complained about him to
Randolph.  As AGS correctly observes, this claim is without merit.  It is

company transferred her to a less desirable position in its Print
Shop in response to her complaints about Cochran.  Second, she
claims that the company laid her off because she both complained
about Cochran and filed a charge with the EEOC.[7]  The court will
address each claim in turn.

To establish a prima facie case of retaliation in violation
of Title VII, Merrell must show: (1) that she engaged in
statutorily protected expression; (2) that she suffered an adverse
employment action; and (3) the existence of a causal connection
between her protected expression and the adverse action.  *Raney v.*

---

undisputed that AGS assigns parking spaces on the basis of the job performed
by the employee, not on an individual basis.  Reply of AGS at 9-10.  Thus,
when Merrell **voluntarily** accepted the transfer to the Print Shop, she
automatically lost the parking privileges associated with her former
secretarial position.  Under such circumstances, the loss of the parking space
cannot qualify as an adverse employment action, which is a necessary component
of her prima facie case.  This same rationale applies with equal force to the
parking violation Merrell received on April 30, 1996.  Merrell puts forward no
evidence to demonstrate that she suffered any tangible job detriment (e.g.,
paying a fine, loss of pay, etc.) as a result of the parking violation.
Obviously, absent such evidence, it is difficult, if not impossible, to
characterize the parking violation as a adverse employment action that would
satisfy her prima facie burden.  Accordingly, the court will not give further
consideration to Merrell's complaints concerning her parking space.

[7]      Merrell also claims that AGS laid her off because she sent a
letter to Randolph on July 1, 1996, in which she both voiced her
dissatisfaction with the Print Shop position and requested a transfer to a
secretarial position.  Pl.'s Mem. of Law at 13.  This claim is without merit.
Merrell's letter does not reference or allege any sort of unlawful employment
practice.  Exh. E to Pl.'s Mot. for Partial Summ. J.  Consequently, the letter
does not constitute statutorily protected expression and cannot serve as the
basis for a retaliation claim.  *See Little v. United Tech.*, 103 F.3d 956, 960
(11th Cir. 1997) (explaining requirements for statutorily protected
expression).

*Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997).
If Merrell establishes a prima facie case for retaliation, then
the burden of production shifts to AGS to put forward evidence of
a legitimate, nondiscriminatory reason that explains why it took
the challenged employment action. *Holifield v. Reno*, 115 F.3d
1555, 1566 (11th Cir. 1997); *Meeks v. Computer Assocs. Int'l*, 15
F.3d 1013, 1021 (11th Cir. 1994). Finally, if AGS meets this
exceedingly light burden, then the burden shifts to Merrell to
show by a preponderance of the evidence that the reason given by
AGS is, in fact, a pretext for retaliation. *Holifield*, 115 F.3d
at 1566; *Meeks*, 15 F.3d at 1021.

As noted above, Merrell initially claims that, after she
complained about Cochran's alleged harassment, AGS retaliated
against her by transferring her to the Print Shop. According to
Merrell, this transfer was retaliatory because the Print Shop job
was more strenuous than her prior secretarial position. She says
that, in addition to other tasks, her Print Shop duties included
lifting boxes, delivering books and mail, running printing
machinery, and moving furniture on one occasion. Pl.'s Mem. of
Law at 11. Finally, Merrell maintains that these duties required
her to be on her feet for hours at a time and often caused her
arms to ache. *Id*.

In response to this claim, AGS contends that Merrell cannot satisfy her prima facie burden. The court agrees. In her deposition, Merrell admits that Randolph *asked* her if she was willing to transfer to the Print Shop to be an administrative assistant to Johnson, the Print Shop supervisor. Def.'s Exh. 4 at 314; Def.'s Exh. 20 at 49. Moreover, before effecting the transfer, Randolph encouraged Merrell to discuss the particulars of the position with G.W. Johnson ("Johnson"), the Print Shop supervisor, and she did so. Def.'s Exh. 9 at 47-49; Def.'s Exh. 20 at 50. Merrell also admits that, after she spoke with Johnson, she *voluntarily* accepted the transfer to the Print Shop. Def.'s Exh. 4 at 314-15. This transfer did not affect Merrell's overall compensation. *Id.* at 335. In short, the record evidence demonstrates that, in response to Merrell's complaint about Cochran, AGS gave her the *option* of transferring to a different position with equal pay and that she accepted the transfer *voluntarily*. Merrell makes no showing to suggest that, if she had refused the transfer to the Print Shop, AGS would have refused to devise an alternative remedy to her concerns. Under such circumstances, the court is unprepared to say that Merrell's transfer to the Print Shop constituted an adverse employment action by AGS. Consequently, with respect to her first

17

retaliation claim, the court concludes that Merrell has failed to satisfy her prima facie burden and that AGS is due to receive summary judgment.  The mere fact that Johnson eventually asked Merrell to perform more labor-intensive tasks than she was accustomed to doing in her secretarial position does nothing to change this conclusion.[8]  *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (7th Cir. 1997) (commenting that "not everything that makes an employee unhappy qualifies as retaliation") (internal quotations omitted).

---

[8]    As indicated above, Merrell contends that her duties in the Print Shop grew to include strenuous, menial tasks.  However, this contention, without more, does not advance her retaliation claim.  In order for Merrell to satisfy her prima facie burden, she must establish a causal connection between her protected expression and the adverse employment action.  Moreover, the Eleventh Circuit recently elaborated on what a plaintiff must show to make out the requisite causal connection by observing:

> In order to satisfy the "causal link" prong of a prima facie retaliation case, a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action.  *Since corporate defendants act only through authorized agents, in a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression and acted within the scope of his or her agency when taking the action.*

*Raney*, 120 F.3d at 1197 (emphasis added and citation omitted).  Here, it is undisputed that Johnson made all work assignments in the Print Shop.  It also is undisputed that Johnson was unaware of Merrell's complaints concerning Cochran until after she left AGS.  Def.'s Exh. 9 at 20.  In other words, Merrell has failed to put forward any evidence of a causal relationship between her complaints about Cochran and her work assignments in the Print Shop.  Thus, even if the court were to conclude that, as a result of having to perform menial tasks, Merrell's transfer to the Print shop constituted an adverse employment action, she still has failed to meet her prima facie burden.

18

In addition, Merrell claims that, after she complained about
Cochran and filed a charge with the EEOC, AGS retaliated against
her by laying her off.  As with her first retaliation claim, AGS
argues that Merrell cannot make out her prima facie case.  This
argument is not well taken.

When the record is viewed in the light most favorable to
Merrell, she satisfies her prima facie burden on her second
retaliation claim.  First, it is undisputed that both Merrell's
complaint concerning Cochran and her filing of an EEOC charge
constitutes statutorily protected expression.  Second, it is
undisputed that, when AGS laid Merrell off, she suffered an
adverse employment action.  Third, it is clear from the affidavit
testimony of Schild, the AGS official that authorized Johnson to
lay-off Merrell, that he was aware of Merrell's complaints
regarding Cochran at the time that he authorized Johnson to do so.
Def.'s Exh. 7 at 4-5.  Thus, there is evidence supporting the
existence of a causal connection between Merrell's complaint and
the loss of her job.  As there is evidence to support each element
of her prima facie case, the court concludes that, with respect to
her second retaliation claim, Merrell has satisfied her prima

facie burden.[9]

However, by articulating several legitimate,
nondiscriminatory reasons for its decision to lay-off Merrell, AGS
has successfully rebutted any inference of retaliation created by
Merrell's prima facie case.  *E.E.O.C. v. Reichhold Chem., Inc.*,
988 F.2d 1564, 1571-72 (11th Cir. 1993).  According to Schild's
affidavit testimony, he decided to lay-off Merrell after
considering: (1) the monthly profit and loss statements for the
Print Shop; (2) his past working experience with Merrell; (3)
Merrell's demonstrated refusal to work more than forty (40) hours
per week; (4) Merrell's "poor work ethic"; and (5) the decreased
need for an employee in Merrell's position.  Def.'s Exh. 7 at 4;
AGS's Mem. In Support of Mot. for Summ. J. at 34.  Consequently,
the burden now shifts to Merrell to show that these reasons are
merely pretexts for retaliation.  *Meeks*, 15 F.3d at 1021;
*Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

To demonstrate pretext, Merrell "has the opportunity to come
forward with evidence, including previously produced evidence

---

[9]     Merrell makes no showing that Schild knew about her EEOC charge at
the time he authorized her lay-off.  Consequently, she cannot meet her prima
facie burden for retaliation regarding her EEOC charge.  Therefore, the court
will address Merrell's second retaliation claim as though her protected
expression consists exclusively of her complaint about Cochran.

establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). As evidence of pretext, Merrell points to Johnson's deposition testimony in which he suggests that Schild decided to lay-off Merrell because he was upset about Merrell's letter to Randolph. Pl.'s Mem. of Law at 13-14. In that letter, Merrell complained about her duties in the Print Shop and requested a transfer to a secretarial position. Exh. E to Pl.'s Mot. for Partial Summ. J. According to Merrell, Johnson's testimony demonstrates that Schild's decision to lay her off was "pure retaliation." Pl.'s Mem. of Law at 14. The court disagrees.

As noted elsewhere in this opinion, Merrell's letter to Randolph does not reference or allege any sort of unlawful employment practice. Absent any such reference or allegation, the letter does not constitute any sort of statutorily protected expression. *See Little v. United Tech.*, 103 F.3d 956, 960 (11th Cir. 1997) (explaining requirements for statutorily protected expression). Consequently, even if Schild chose to lay-off Merrell because she wrote the letter to Randolph, it cannot be

21

said that he did so as a result of an *improper* retaliatory motive.
Rather, once hearsay concerns are put aside, Johnson's testimony
suggests, at most, that Merrell's letter may have been an
additional, but undisclosed, *nondiscriminatory* reason for Schild's
decision.  Obviously, the existence of "a possible additional non-
discriminatory basis" for laying off Merrell does nothing to prove
that AGS's articulated rationales for that decision are in any way
pretextual.  *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th
Cir. 1998).  As Merrell fails to put forward any other evidence of
pretext, the court concludes that, with respect to her second
retaliation claim, AGS is entitled to judgment as a matter of law.


### IV. *Conclusion*

The court will enter a separate and appropriate order in
keeping with the conclusions reached in this memorandum opinion.
DONE this _4^th_ day of June, 1998.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

22